JS - 6

LINK: 5, 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1388 GAF (JCx) | Date | May 4, 2010 |
|---|---|---|---|
| Title | Mike Tortorella v. DRS Technologies, Inc. et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** (In Chambers)

### ORDER REMANDING CASE

### I. INTRODUCTION

On February 2, 2010, plaintiff Mike Tortorella ("Tortorella"), filed suit against defendants DRS Technologies, Inc. and DRS Sensors & Targeting Systems, Inc. ("Defendants"), stating claims for, <u>inter alia</u>, fraud, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and violations of California Business & Professions Code § 17200 (the "Unfair Competition Law" or "UCL"). (Not. Remov., Docket No. 1, Ex. A.) Defendants timely removed the case to this Court (Not. Remov. at 1.), and Tortorella now moves to remand. (Docket No. 6.) Tortorella's motion is **GRANTED**. The Court explains its reasoning in greater detail below.

### II. DISCUSSION

#### A. APPLICABLE LAW

##### 1. REMOVAL AND FEDERAL QUESTION JURISDICTION

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction...to the district court of the United States for the district...embracing the place where such action is pending." 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1331, "district courts shall have original jurisdiction of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1388 GAF (JCx) | Date | May 4, 2010 |
|---|---|---|---|
| Title | Mike Tortorella v. DRS Technologies, Inc. et al | | |

all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In general, a case "arise[s] under" the laws of the United States only where the "well-pleaded complaint establishes" that "federal law creates the cause of action." Franchise Tax Bd. of State of California v. Constr. Laborers Vacation Trust for S. California, 463 U.S. 1, 27 (1983); see also Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908).

An exception to the literal application of the well-pleaded complaint rule applies in cases where the subject matter of the complaint falls within an area where federal law occupies the entire field, giving rise to the complete preemption doctrine. Under the complete preemption doctrine, the preemptive force of a federal statute converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987); Jackson v. S. Cal. Gas Co., 881 F.2d 638, 641 (9th Cir. 1989); Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 945 (9th Cir. 2009).

**2. COMPLETE PREEMPTION UNDER ERISA**

In Metropolitan Life Insurance Company v. Taylor, 481 U.S. 58 (1987), the Supreme Court held that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), "reflected Congress's intent to so completely pre-empt a particular area that any civil complaint raising" the "select group of claims" described in section 1132(a) is "necessarily federal in character." Modesto & Empire, 581 F.3d at 945 (internal quotation marks omitted) (citing Taylor, 481 U.S. at 63-64). Indeed, "Congress had clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of [29 U.S.C. § 1132(a)] removable to federal court." Modesto & Empire, 581 F.3d at 945 (internal quotation marks omitted) (citing Taylor, 481 U.S. at 66).

Accordingly, if any of a complaint's state law claims "are entirely encompassed by § [1132](a), that complaint is converted from an ordinary state common law complaint into one stating a federal claim," and may properly be removed. Modesto & Empire, 581 F.3d at 945 (internal quotation marks omitted) (citing Taylor, 481 U.S. at 65-66). But where the "asserted state law claims do not fall within the civil enforcement provisions of § 1132(a)," complete preemption does not apply and "subject matter jurisdiction is lacking." Toumajian v. Frailey, 135 F.3d 648, 657 (9th Cir. 1998).

**B. APPLICATION**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1388 GAF (JCx) | Date | May 4, 2010 |
|---|---|---|---|
| Title | Mike Tortorella v. DRS Technologies, Inc. et al | | |

Defendants oppose remand by contending that Tortorella's claims are "completely preempted" by 29 U.S.C. § 1132(a)(1)(B), and that the Court therefore has federal-question subject matter jurisdiction. (Opp. at 2, 1.)

Under section 1132(a)(1)(B), a private citizen may bring a civil action "to recover benefits due her under" an ERISA plan, "to enforce her rights under the plan or [to] clarify her rights to future benefits under the terms of the plan." Toumajian, 135 F.3d at 656. Under Aetna Health, Inc. v. Davila, 542 U.S. 200 (2004), "a state-law cause of action is completely preempted" by section 1132(a)(1)(B) only where "an individual, at some point in time, could have brought" the claim under that particular section. Modesto & Empire, 581 F.3d at 946 (internal quotation marks omitted) (citing Davila, 542 U.S. at 210).

Accordingly, the Court considers whether Tortorella could have brought any of his state-law claims under section 1132(a)(1)(B).

### 1. TORTORELLA'S COMPLAINT

Tortorella states that in October 1998, Defendants "acquired" his division at the "Hughes Aircraft Company." (Not., Ex. A [Compl.] ¶ 10.) While "at Hughes," Tortorella had "benefits, including a retirement plan ("Hughes Plan") which offered substantially more benefits than [Defendants'] pension plan." (Id.) At the time of the acquisition, Tortorella and many of his fellow employees "could not work for Hughes' successor, Raytheon, for three years," due to a Department of Justice divestiture order. (Id. ¶ 11.) However, if Tortorella left Defendants' employ and "returned to Raytheon within five years...he could 'bridge' back into the Hughes Plan and continue to receive its" generous benefits. (Id.)

In October 2001, Tortorella and other employees were "considering returning to work for Raytheon to bridge back into the Hughes Plan." (Id. ¶ 12.) At that time, two of Defendants' employees "informed" Tortorella and his colleagues "that [Defendants were] creating a Supplemental Retirement Plan ("SRP") to entice him and others to stay" in Defendants' employ. (Id.) Defendants' employees further represented that: (1) the SRP was "funded at the corporate level of the company"; (2) Tortorella "would be paid the full cash value of the SRP"; and (3) "the SRP...would pay benefits to" Tortorella "to the same extent and value as the benefits that were provided by the Hughes Plan." (Id. ¶¶ 13-14; 47.)

In 2008, Tortorella discovered "that the SRP was not corporate funded"; instead, the division employing him would be required to pay contributions to the SRP. (Id. ¶ 17.) As a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1388 GAF (JCx) | Date | May 4, 2010 |
|---|---|---|---|
| Title | Mike Tortorella v. DRS Technologies, Inc. et al | | |

result, Tortorella's "employment opportunities were curtailed because" when jobs in Defendants' other divisions became available, those divisions "were deterred" from hiring him "by the cost of the SRP contributions required for his employment." (Id.)

Subsequently, Defendants announced that they "had decided to 'freeze' the benefits of the SRP" and told Tortorella he "would be [a] participant[] in the Company pension plan, earning only benefits under that plan rather than under the SRP." (Id. ¶ 20.) At or around that time, Tortorella "demand[ed] that the Defendants either maintain the SRP funding...or provide the present cash value of the SRP to" him. (Id. ¶ 18.) Although they "refus[ed] to pay...the cash value of [the] SRP," and represented that they "could not pay" Tortorella such a sum, the Defendants did announce that "they were continuing the SRP benefit accruals." (Id. ¶¶ 25, 47, 22.) Tortorella subsequently discovered, however, that Defendants could have paid him the SRP's cash value, because "several...executives had received the cash value of their Company pension plans," in amounts ranging between $1 million and $16 million. (Id. ¶¶ 48, 25.)

In sum, Tortorella's claims for fraud, constructive fraud, and negligent misrepresentation are supported by allegations that in "reasonable and justifiable reliance upon" Defendants' "representations," he "did not accept job offers from Raytheon, but instead remained employed" with Defendants. (Id. ¶ 16.) Had he "known the actual facts, he would have accepted employment with Raytheon and bridged his Hughes Plan benefits." (Id. ¶ 50.) But because Tortorella remained in Defendants' employ, he was "unable to bridge back into the Hughes Plan[,]...did not have comparable benefits under the SRP," and therefore lost $1 million in retirement benefits. (Id. ¶ 51.)

Additionally, Tortorella states a claim for breach of the implied covenant of good faith and fair dealing, arguing that he had an "employment relationship" with Defendants, and that their "failure to fund the SRP at the corporate level...interfered with" his "ability to deliver the services...which he was qualified to deliver" during the course of that relationship. (Id. ¶¶ 66, 68.)

### 2. NATURE OF TORTORELLA'S CLAIMS

Clearly, Tortorella does not seek to recover benefits due to him under the SRP, nor does he aim to enforce his rights pursuant to the SRP. See 29 U.S.C. § 1132(a)(1)(B). Indeed, Defendants only contend that Tortorella's claims seek "to clarify his entitlement to benefits under" the SRP. See Opp. at 3; Toumajian, 135 F.3d at 656. However, because none of the claims at issue actually seeks such clarification, the claims are not completely preempted by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1388 GAF (JCx) | Date | May 4, 2010 |
|---|---|---|---|
| Title | Mike Tortorella v. DRS Technologies, Inc. et al | | |

section 1132(a)(1)(B).

Tortorella's fraud and misrepresentation claims clearly turn on Defendants' alleged false statements regarding the nature and status of the SRP. Tortorella alleges Defendants advised him that the SRP was of the "same value and benefit" as the Hughes Plan, that the SRP was corporate-funded and not division-funded, and that the SRP's cash value could not be paid upon Tortorella's demand; however, none of these statements was true. (Compl. ¶¶ 12, 47-48.)

These types of claims do not fall within the civil remedies contemplated by section 1132(a)(1)(B). In Olson v. Gen. Dynamics Corp., 960 F.2d 1418 (9th Cir. 1991)—relied on by Defendants—the Circuit suggested, in dicta, that "ERISA's civil remedy" in section 1132(a)(1)(B) does "not extend to claims of oral misrepresentation regarding the level of benefits provided by a plan." 960 F.2d at 1422; accord Eisenenegger v. Pac. Telesis, 1996 WL 190835, at *3 (N.D. Cal. Apr. 15, 1996) (citing Olson, 960 F.2d at 1422); see also Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1210 (2d Cir. 2002) (a "claim under § 1132(a)(1)(B), in essence, is the assertion of a contractual right.") (emphasis added) (internal citations and quotation marks omitted).

Other courts in this Circuit have considered similar state-law claims and determined they did not fall within the civil remedial scheme of section 1132(a)(1)(B). In Mendelsohn v. Intalco Aluminum Corp., 2006 WL 3192513 (W.D. Wash. Nov. 2, 2006), the plaintiff sought "the wages, bonuses, medical benefits, vacation and sick time...he lost by terminating his employment early based on defendant's representations about his pension benefits." Mendelsohn, 2006 WL 3192513, at *2. Because the plaintiff was "not attempting [to] recover lost or future pension benefits or to enforce his rights under the" pension plan, section 1132(a)(1)(B) did not "support federal jurisdiction." Id.

Additionally, in Majeske v. DRS Techs., Inc., 2010 WL 1286865 (C.D. Cal. Mar. 30, 2010), another plaintiff sued Defendants and stated similar claims regarding alleged SRP misrepresentations and the higher-value Hughes Plan. The Majeske court concluded that the plaintiff's "claims are for the benefits that he would have received under another plan that he did not participate in," and held that "subsection [1132(a)](1)(B) does not apply." Id. at *2 (emphasis added). The reasoning is equally applicable in this case, because Tortorella fundamentally seeks a "loss" in benefits, defined as the difference between the "Hughes Plan benefits" and the less-than "comparable benefits under the SRP," that occurred due to his reliance on Defendants' allegedly-untrue statements. (Not. Ex. A [Compl.] ¶¶ 50-51.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1388 GAF (JCx) | Date | May 4, 2010 |
|---|---|---|---|
| Title | Mike Tortorella v. DRS Technologies, Inc. et al | | |

    Furthermore, Tortorella's breach-of-implied-covenant claim does not seek to "clarify" an entitlement to future SRP benefits. Instead, in describing an "employment relationship" whereby he "provided services" to Defendants "for payment," Tortorella is referring to an express or implied employment contract between himself and the Defendants. (Id. ¶ 66.) Fundamentally, the implied-covenant claim seeks to hold Defendants' responsible for their alleged breach of contractual obligations; it does not seek a court judgment describing the future SRP benefits to which Tortorella may be entitled. See Modesto & Empire, 581 F.3d at 947-48 (plaintiff's claim "not completely preempted" where plaintiff sued "in its own right pursuant to an independent obligation" and not "under [an] ERISA plan").

    Finally, because none of Tortorella's six substantive state-law claims falls within ERISA's civil remedial provisions in 29 U.S.C. § 1132(a)(1)(B),[1] his derivative UCL claim likewise cannot serve as a basis for removal under the complete preemption doctrine.

### III. CONCLUSION

    Because none of Tortorella's claims is completely preempted,[2] the Court lacks subject matter jurisdiction, and Tortorella's remand motion is **GRANTED**. Defendants' motion to dismiss is **DENIED** as moot. The motion hearing presently scheduled for Monday, May 10, 2010 is hereby **VACATED** and the case is **REMANDED** to Los Angeles County Superior Court.

    **IT IS SO ORDERED.**

---

    [1] Defendants "make no assertion that ERISA preemption applies to [Tortorella's] claims for age discrimination and wrongful termination." (Opp. at 1.)

    [2] The Court notes that Tortorella's claims might be subject to a <u>defense</u> of <u>conflict</u> preemption, because Defendants could argue they "'relate to' an ERISA benefit plan." Modesto & Empire, 581 F.3d at 945 (citing 29 U.S.C. § 1144(a)). But "a defense of conflict preemption under § [1144(a)] does not confer federal question jurisdiction on a federal district court." Id.